IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Newport News Division

UNITED STATES OF AMERICA,

        v.                                                    Criminal No. 4:20cr47 (DJN)

IRIS KIM, *et al.*,
        Defendants.

**MEMORANDUM OPINION**
**(Granting in Part and Denying in Part**
**Motion for Preliminary Order of Forfeiture)**

This matter comes before the Court on the Government's Motion for a Preliminary Order of Forfeiture (ECF No. 175). In its Motion, the Government seeks money judgments from all Defendants, as well as the forfeiture of certain specific property as to Defendant Beyung Kim. Specifically, the Government seeks a joint and several money judgment from Defendants Iris Kim, Inc. ("I-Tek") and Beyung Kim in the amount of $5,188,263.35, which the Government contends represents the entire "proceeds" of the conspiracy in Count One. The Government also seeks $109,074 from Seung Kim, $1,416,385 from Park, $736,464 from You and $439,697 from Pak, which the Government contends represents the amount that these individuals personally obtained as a result of the offense in Count One. The Government asks that each of these Defendants be held jointly and severally liable with Defendants I-Tek and Beyung Kim for these amounts. Finally, the Government seeks forfeiture from Beyung Kim of a Mercedes-Benz E400 with VIN # WDDKK6FF2GH346128, real property and improvements located at 55 Ferguson Cove, Newport News, Virginia, ("Ferguson Cove Property") and real property and improvements located at 2210 Executive Drive, Suite D, Hampton, Virginia, ("Executive Drive

Property"). The Government contends that the Mercedes-Benz constitutes proceeds of the conspiracy and the real property constitutes forfeitable substitute assets.

For the reasons set forth below, the Government's Motion (ECF No. 175) is hereby GRANTED IN PART and DENIED IN PART. Specifically, the Court GRANTS the Government's Motion as it pertains to the money judgments sought from Beyung Kim and I-Tek and the property sought from Beyung Kim. However, the Court DENIES the Government's Motion as it pertains to the money judgments sought from the remaining Defendants. Specifically, the Court FINDS that the Government has failed to show that all of the payments that Defendants Seung Kim, Park, Pak and You received from the years 2012 to 2018 are traceable to proceeds of their crime. Because only 33.56% of I-Tek's total income was derived from the relevant contracts during these years, the Court further FINDS that only 33.56% of these Defendants' total compensation is traceable to proceeds of their crime and, therefore, forfeitable. Therefore, the Court ORDERS that Defendant Seung Kim shall forfeit $36,605.23, Pak shall forfeit $147,562.31, Park shall forfeit $475,338.81 and You shall forfeit $247,157.32 with each Defendant to be held jointly and severally liable with Defendants I-Tek and Beyung Kim for these amounts.

## I.   ANALYSIS

### A.   Statutes Authorizing Forfeiture

All Defendants pled guilty to Count One of the Indictment (ECF No. 1), Conspiracy to Defraud and to Commit Offenses Against the United States, in violation of 18 U.S.C. § 371. As detailed in the Indictment, Defendants' conspiracy involved an agreement to commit (1) wire fraud, in violation of 18 U.S.C. § 1343; (2) mail fraud, in violation of 18 U.S.C. § 1341; (3) importing merchandise through false statements, in violation of 18 U.S.C. § 542; and, (4)

smuggling, in violation of 18 U.S.C. § 545. Defendants I-Tek and Beyung Kim also pled guilty to a substantive violation of 18 U.S.C. § 542 in Count Twenty-Six.

Based on these guilty pleas, the Government seeks forfeiture under a number of statutes that they describe as interlocking: 18 U.S.C. § 981 (the civil forfeiture statute), 18 U.S.C. § 982 (the criminal forfeiture statute), 21 U.S.C. § 853 (establishing the procedures for drug forfeitures) and 28 U.S.C. § 2461(c) (applying the procedures set forth in § 853 to all criminal forfeitures). In so doing, the Government misunderstands the interplay of these statutes and ignores the Fourth Circuit's finding in *United States v. Chittenden*, 896 F.3d 633 (4th Cir. 2018).

In *Chittenden*, the district court ordered criminal forfeiture based on the defendant's convictions for bank and mail fraud. *Id.* at 635-36. The district court's order cited to both the civil and criminal forfeiture statutes, the same statutes that the Government offers here in support of its forfeiture motion. *Id.* at 635 n. 2. In discussing the district court's order, the Fourth Circuit found 18 U.S.C. § 981 and 28 U.S.C. § 2461(c) inapplicable, stating that "§ 2461, and by extension § 981, does not apply when a criminal forfeiture provision applies to the crime charged." *Id.* Because forfeiture was available under § 982 (the criminal forfeiture statute), "18 U.S.C. § 982(a)(2), not 28 U.S.C. § 2461 and 18 U.S.C. § 981, served as the basis for the district court's forfeiture order." *Id.*

In other words, the Fourth Circuit has directed that a trial court must utilize the criminal forfeiture statute (§ 982) to address forfeiture following a conviction, unless this statute does not apply to the conviction for which forfeiture is sought. Only if § 982 does not apply to the crime of conviction may a trial court turn to 28 U.S.C. § 2461 and 18 U.S.C. § 981 to authorize forfeiture. Consequently, the Government's efforts to "mix and match" these various statutes to

3

suit their needs here would violate the Fourth Circuit's command in *Chittenden*, because if § 982 applies to Defendants' convictions for Count One, then § 981 has no relevance.

The Court must therefore answer whether 18 U.S.C. § 982 applies to Defendants' convictions. That answer is clearly yes. Section 982(a)(2)(B) provides in relevant parts:

> The court, in imposing sentence on a person convicted of a violation of, *or a conspiracy to violate* — section . . . 542, 545 . . . of this title, shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as a result of such violation.

18 U.S.C. § 982(a)(2)(B) (emphasis added).[1]

Thus, there can be no question that § 982(a)(2) applies, as all Defendants admitted in their Statement of Facts to violating sections 542 and 545 as part of the conspiracy alleged in Count One. (I-Tek SOF (ECF No. 96) at 3; B. Kim SOF (ECF No. 98) at 3; Pak SOF (ECF No. 87) at 3; S. Kim SOF (ECF No. 90) at 3; Park SOF (ECF No. 92) at 3; You SOF (ECF No. 85) at 3.) *See United States v. Ivanchukov*, 405 F. Supp. 2d 708, 709 (E.D. Va. 2005) (finding a defendant convicted of conspiracy to commit immigration fraud in violation of 18 U.S.C. § 371 subject to forfeiture under § 982).[2] Further, Defendants I-Tek and Beyung Kim also pled guilty to Count Twenty-Six, which charged them with a substantive violation of 18 U.S.C. § 542, which is explicitly covered by § 982(a)(2). Consequently, under *Chittenden*, 28 U.S.C. § 2461 and 18 U.S.C. § 981 have no applicability here, and the Court will proceed under § 982 alone.

---

[1] Section 982(a)(2)(A) also references violations of the mail and wire fraud statutes (18 U.S.C. §§ 1341, 1343), but only when "affecting a financial institution." Consequently, the Government cannot seek forfeiture under § 982 here based on the conspiracy to violate these statutes, because Defendants' violations of these statutes did not affect a financial institution.

[2] That Count One alleged other objects of the conspiracy makes no difference, as the sole issue is whether *any* basis exists for criminal forfeiture based on Defendants' conviction for Count One (the § 371 conspiracy charge). *See United States v. Dong*, 252 F. Supp. 3d 447, 457 (D. S.C. 2017) (finding that because objects of § 371 conspiracy included violations of 18 U.S.C. §§ 641 and 1343, any proceeds traceable to this count of conviction were subject to forfeiture).

**B.     Application of § 982**

The consequences of employing only § 982 to authorize forfeiture prove significant. For one, because forfeiture is authorized pursuant to this statute alone, the Government may only seek proceeds attributable to Defendants' violations of § 542 (importing) and § 545 (smuggling), because only these crimes (and not Defendants' violations of the mail and wire fraud statutes) are subject to forfeiture under § 982.

Second, the forfeitable amount proves greater than that which the Government seeks, given that § 982's definition of "proceeds" is broader than that of § 981. Specifically, § 982 mandates that a convicted defendant forfeit "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation." 18 U.S.C. § 982(a)(2). Section 982(a)(2)(B) itself does not provide a definition of "proceeds." But, the case law interpreting this provision generally suggests that "proceeds" under this section means total "receipts" instead of mere "profits." *United States v. Peters*, 732 F.3d 93, 101-02 (2d Cir. 2013).

Conversely, 18 U.S.C. § 981 provides two definitions of "proceeds." In cases involving illegal goods, illegal services and "unlawful activities," "proceeds" includes "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A). However, in cases involving lawful goods or services "sold or provided in an illegal manner," "proceeds" includes "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B). But, unlike § 981(a)(2)(B), § 982 offers no such credit to defendants. *See United States v. Boulware*, 384 F.3d 794, 813 (9th Cir.

5

2004) (finding that nothing in the text of § 982(a)(2) entitled defendant to a credit or deduction from forfeiture amount that represented defendant's gross receipts from fraud).

Thus, in sum, because only § 982 applies here, Defendants are not entitled to any credit or deduction from the proceeds of their conspiracy that involved the entry of goods into the United States by means of false state statement (§ 542) and smuggling goods into the United States (§ 545). Rather, the "proceeds" of Defendants' conspiracy shall be calculated as the total receipts of that part of Defendants' conspiracy that involved violations of § 542 and § 545.

### C. Calculating Total "Proceeds" of the I-Tek Conspiracy

Following these commands of § 982(a)(2), the proceeds here consist of the following amounts broken down by contract:

| Contract | Forfeiture Amount[3] |
|---|---|
| USMC | $6,206,049.31[4] |
| USCG | $918,271.40 |
| NDNG | $159,980.00 |
| INNG | $141,000.00 |
| ARNG | $110,350.00[5] |
| WP | $82,647.20 |
| ARMY | $7,260.00 |
| **Total Proceeds Subject to Forfeiture: $7,625,557.91** | |

---

[3] The Court uses the amounts paid for each contract as set forth in the parties' Statements of Fact.

[4] The loss amount for this contract includes a $520,413.48 reduction from the total amount paid ($6,726,462.79), because Defendants sourced a portion of these goods from the United States and, therefore, these goods do not implicate either § 542 or § 545. (B. Kim PSR at 22; Gov't Ex. 10 at 2; Gov't Ex. 11.)

[5] This loss amount also includes a reduction ($13,650.00) for domestic goods provided from the total amount paid ($124,000.00), because Defendants sourced a portion of these goods from the United States. (Gov't Ex. 10 at 2; Gov't Ex. 11.)

### D. Forfeiture Amounts as to Seung Kim, Park, Pak and You

While this figure — $7,625,557.91 — represents the total proceeds of this conspiracy, the Court must then address the question of how much of I-Tek's total proceeds that the Government can seek from each Defendant. In *Honeycutt v. United States*, the Supreme Court held that under 21 U.S.C. § 853(a)(1) — a statute mandating forfeiture for drug crimes — a defendant could not be found jointly and severally liable for the proceeds of a co-conspirator that the defendant himself did not personally acquire. 137 S.Ct. 1626, 1635 (2017). The Fourth Circuit has since extended *Honeycutt*'s holding to 18 U.S.C. § 982(a)(2), finding that forfeiture under this statute is also "limited to property the defendant acquired as a result of the crime. The statute does not permit courts to hold a defendant liable for proceeds that only her co-conspirator acquired." *Chittenden*, 896 F.3d at 638-39.

Consequently, the Court will limit forfeiture for Seung Kim, Pak, Park and You to only the proceeds that they *personally* acquired *as a result of their crime*. Indeed, while I-Tek received the total proceeds of the conspiracy, the amount actually received (and therefore forfeitable) by these co-conspirators proves much less, as these Defendants only actually and personally received $109,074 (Seung Kim), $439,697 (Pak), $1,416,385 (Park) and $736,464 (You) — essentially, these Defendants' salaries — during their time working at I-Tek. No other evidence exists that these Defendants had any control or access to the total proceeds of the conspiracy, or even the proceeds connected to the individual contracts on which these Defendants worked.

However, the entire value of these salaries are not automatically forfeitable, as the Government must show that a sufficient nexus exists between the forfeiture amount sought and the proceeds of the crime. *United States v. Martin*, 662 F.3d 301, 307 (4th Cir. 2011) (citing Fed. R. Crim. P. 32.2(a)). To make this determination, courts generally apply a "but for" test, pursuant

7

to which property is considered forfeitable if the defendant would not have received the property "but for" his participation in the illegal offense. *United States v. Farkas*, 474 F. App'x 349, 359-60 (4th Cir. 2012) (collecting cases applying this test); *see also Ivanchukov*, 405 F. Supp. 2d at 712 (noting that the "'but for' test has previously been adopted by several circuits to assess the nexus between illegal conduct and property sought in criminal forfeiture proceedings"). However, this does not require that the Government demonstrate a direct line between the defendant's specific criminal conduct and the property sought. *See United States v. Guess*, 2015 WL 1208882, at *5 (W.D.N.C. Mar. 17, 2015) ("Strict tracing from a particular criminal act to a particular asset is not required if the totality of the circumstances establish that the asset constitutes or is derived from proceeds."); *United States v. Hailey*, 887 F. Supp. 2d 649, 653 (D. Md. Aug. 23, 2012) ("The government must trace the funds to the criminal course of conduct, but it need not trace them to a particular illegal act, to satisfy its burden.").

Based on these principles, the Court finds that the Government has failed to meet its burden to the extent that it seeks forfeiture of the total amount of the compensation from I-Tek that these Defendants received from 2012 to 2018. The Government makes no effort to demonstrate that all of the compensation that each Defendant received from I-Tek traces back to the Defendants' illegal conduct. During their years working at I-Tek, Defendants presumably performed some legitimate work, especially since I-Tek entered into the relevant contracts that Defendants are being held liable for starting in 2014. Moreover, the Court has no way of determining that the income that Defendants received from I-Tek was derived *in its entirety* from the proceeds of Defendants' crime. Indeed, Government Exhibit 14 provides a breakdown of I-Tek's primary sources of revenue from the years 2012 to 2018, and, for each contract, indicates the total percentage of I-Tek's total income that the contract represented. The percentage of I-

8

Tek's total income derived from the relevant contracts was only 33.56%. Despite having the burden to do so, the Government makes no effort to reconcile why 100% of Defendants' salaries would be traced to contracts that made up only 33.56% of the company's revenue. Therefore, at least *some* portion of Defendants' income likely came from other, untainted sources. Thus, the Court cannot conclude that Defendants would not have received the total forfeiture amount sought by the Government "but for" their crime.

However, the Court does find it reasonable to assume that 33.56% of the total amounts paid to each Defendant from 2012 to 2018 were fraud proceeds traceable to their offense and, thus, forfeitable. *See United States v.* Roberts, 660 F.3d 149, 166 (2d Cir. 2011) ("[T]he law does not demand mathematical exactitude in calculating the proceeds subject to forfeiture," and, instead, the Court may "make reasonable extrapolations" from the facts using "general points of reference as a starting point."). For these reasons, the Court finds that Defendants Seung Kim, Pak, Park and You are liable for the following amounts:

| Defendant | Total Amount Earned | Forfeitable Amount |
|---|---|---|
| S. Kim | $109,074 | $36,605.23 |
| Pak | $439,697 | $147,562.31 |
| Park | $1,416,385 | $475,338.81 |
| You | $736,464 | $247,157.32 |

E.   **Forfeiture Amounts as to Beyung Kim and I-Tek**

Conversely, Defendant Beyung Kim can be held jointly and several liable with I-Tek for the *entire* proceeds of this conspiracy. *See United States v. Boutcher*, 998 F.3d 603, 611 (4th Cir. 2021) (statement of facts established that defendant had full control of shared business accounts; consequently, entirety of accounts were subject to forfeiture); *United States v. Perry*, 2014 WL 7499372, at *2 (E.D. Va. Dec. 22, 2014) (sole owner of company "exercised complete and unfettered dominance over the corporate entity" resulting in defendant being jointly and severally

9

liable for forfeiture of corporate assets). As noted by the Government in its Motion, the general consensus among the Courts of Appeals since *Honeycutt* concludes that *Honeycutt*'s general rule does not extend to the leaders or "masterminds" of a conspiracy and, therefore, the leader may be held liable for the entire proceeds of the conspiracy. *Boutcher*, 998 F.3d at 611 n.10; *United States v. Elbeblawy*, 839 F. App'x 398, 400 (11th Cir. 2021); *United States v. Saccoccia*, 955 F.3d 171, 175 (1st Cir. 2020); *United States v. Leyva*, 916 F.3d 14, 30-31 (D.C. Cir. 2019); *United States v. Potts*, 765 F. App'x 638, 640 (3d Cir. 2019); *United States v. Bangiyev*, 359 F.Supp.3d 435, 440 (E.D. Va. 2019).

Given that Beyung Kim constituted the clear leader of this criminal scheme, as the Court has already found in calculating the applicable Sentencing Guidelines range, the Court likewise finds that Iris Kim and Beyung Kim may be held jointly and severally liable for the entire proceeds of I-Tek's conspiracy, which would be $7,625,557.91. However, because the Government only seeks a monetary judgment in the amount of $5,188,263.35, the Court will limit its order of forfeiture to this amount.

### F. Forfeiture of Mercedes

The Court further finds that the Government has met its burden to show that the Mercedes-Benz E400 with VIN #WDDKK6FF2GF346128 constitutes proceeds of the fraud conspiracy. The Declaration of Defense Contract Audit Agency (DCAA) Senior Auditor Gina Vaughan ("Declaration" (ECF No. 175-1)) provides an analysis of I-Tek's bank records, which reveal that proceeds from USCG Contract HSCG84-15-D-BB8074 were used to purchase the Mercedes from Autos of Palm Beach. (Declaration ¶ 5.) "The [lowest intermediate balance rule] provides that where the balance of an account into which tainted proceeds are deposited subsequently dips below the amount of those tainted proceeds, the only tainted funds thereafter

traceable to the account are funds equal to that lowest account balance." *United States v. Miller*, 911 F.3d 229, 234 (4th Cir. 2018) (approving and explaining application of lowest intermediate balance rule). Applying this rule, it proves clear that the cost of the Mercedes is derived from over 98% proceeds from this conspiracy and therefore forfeitable.

### G.     Forfeiture of Substitute Assets

The Government also seeks forfeiture of substitute assets under section 982(b)(1), which incorporates the provisions of 21 U.S.C. § 853. When a defendant lacks the requisite funds to satisfy a money judgment, § 853(p) authorizes the Government to seek forfeiture of substitute assets. 21 U.S.C. § 853(p); *United States v. Manlapaz*, 825 F. App'x 109, 116 (4th Cir. 2020).

Section 853(p) states that the Court must order the forfeiture of "any other property of the defendant" if "as a result of any act or omission of the defendant" the proceeds from the offense:

> (A) cannot be located upon the exercise of due diligence;
> (B) has been transferred or sold to, or deposited with, a third party;
> (C) has been placed beyond the jurisdiction of the court;
> (D) has been substantially diminished in value; or
> (E) has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1-2). "Section 853(p) is not discretionary; rather, the statute mandates forfeiture of substitute assets when the tainted property has been placed beyond the reach of a forfeiture." *Manlapaz*, 825 F. App'x at 116 (internal quotations omitted) (citing *United States v. Alamoudi*, 452 F.3d 310, 314 (4th Cir. 2006)). Furthermore, "there are no limits on what property may be substituted for the proceeds. Thus, there is no requirement that substitute assets be connected to the offense giving rise to forfeiture." *Id.* (internal citations omitted).

The evidence offered by the Vaughan Declaration demonstrates that the circumstances here satisfy both §§ 853(p)(1)(A) and (C). The Declaration certifies that Beyung Kim via I-Tek wired at least $2,220,000 in excess fraud proceeds from I-Tek's bank account to Goldway

11

International Trading, Ltd. ("Goldway"). (Declaration ¶¶ 1-4.) Beyung Kim's certified public accountant secured the funds and then sent them to South Korea and/or to BBK Enterprises, a company owned by Beyung Kim and his wife. (Declaration ¶ 4.) BBK Enterprises used the funds to purchase Beyung Kim's wife's law firm buildings and a residence. (Declaration ¶ 4.) Therefore, the Court authorizes the forfeiture of the properties located at 55 Ferguson Cove, Newport News, Virginia, and at 2210 Executive Drive, Unit D, Hampton, Virginia, to the United States pursuant to 21 U.S.C. § 853(p).

Beyung Kim contends that the Court should not order forfeiture of his primary residence, because his wife is the co-owner of the home. (B. Kim Forfeiture Mem. at 6.) However, 21 U.S.C. § 853(n) provides a mechanism by which third parties can assert a claim to arguable forfeitable property. The third party must petition the Court independently and assert his or her own property interest in the substitute assets, after which the Court will hold a hearing on the claim. *United States v. Morgan*, 224 F.3d 339, 341 (4th Cir. 2000). However, a third party claimant does not have a right to be heard before the entry of the preliminary order of forfeiture; rather, § 853(n) "provides all of the process due . . . [as] it requires that the petitioners receive notice of the order of forfeiture before its final implementation . . . ." *United States v. McHan*, 345 F.3d 262, 270 (4th Cir. 2003).

## II.   CONCLUSION

For the foregoing reasons, the Government's Motion (ECF No. 175) is hereby GRANTED IN PART and DENIED IN PART. Specifically, the Court GRANTS the Government's Motion as it pertains to the money judgments sought from Beyung Kim and I-Tek and the personal property sought from Beyung Kim. However, the Court DENIES the Government's Motion as it pertains to the money judgments sought from the remaining Defendants. Specifically, the Court

FINDS that the Government has failed to show that *all* of the payments that Defendants Seung Kim, Park, Pak and You received from the years 2012 to 2018 are traceable to proceeds of their crime. Because only 33.56% of I-Tek's total income was derived from the relevant contracts during these years, the Court further FINDS that only 33.56% of these Defendants' total income is traceable to proceeds of their crime and, therefore, forfeitable. In sum, the Court ORDERS that Defendants shall forfeit the following:

| Defendant | Forfeitable Amount | Additional Assets to Forfeit | Joint and Several? |
|---|---|---|---|
| I-Tek | $5,188,263.35 | N/A | Yes, with B. Kim |
| B. Kim | $5,188,263.35 | Mercedes-Benz E400 with VIN # WDDKK6FF2GH346128<br><br>Ferguson Cove Property<br><br>Executive Drive Property | Yes, with I-Tek |
| S. Kim | $36,605.23 | N/A | With B. Kim and I-Tek only |
| Pak | $147,562.31 | N/A | With B. Kim and I-Tek only |
| Park | $475,338.81 | N/A | With B. Kim and I-Tek only |
| You | $247,157.32 | N/A | With B. Kim and I-Tek only |

An appropriate Order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: August 10, 2021